DAVID L. ANDERSON (CABN 149604)
United States Attorney

HALLIE HOFFMAN (CABN 210020)
Chief, Criminal Division

JASON KLEINWAKS (NYBN 5335013 / DCBN 1049058)
Assistant United States Attorney

    450 Golden Gate Avenue, Box 36055
    San Francisco, California 94102-3495
    Telephone: (415) 436-6924
    FAX: (415) 436-7234
    jason.kleinwaks@usdoj.gov

Attorneys for United States of America

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | CASE NO. 19-CR-0594 EMC |
| Plaintiff, | GOVERNMENT'S SENTENCING MEMORANDUM |
| v. | Sentencing Date: March 25, 2020 |
| CESAR RAMOS,<br>  a/k/a Jehova De Jesus Torres-Arteaga, | Time: 2:30 p.m.<br>Judge: Hon. Edward M. Chen |
| Defendant. | |

The United States respectfully submits the following information for the Court's use in imposing a sentence in this case.

**II.    FACTUAL BACKGROUND**

    **A. Instant Offense**

On October 23, 2019, Defendant Cesar Ramos was arrested after selling heroin to an undercover officer. PSR ¶ 6; Plea Agreement ¶ 2. Mr. Ramos was indicted on November 7, 2019, by a one-count Indictment charging him with violating 21 U.S.C. §§ 841(a)(1) and (b)(1)(C) for distribution of heroin. PSR ¶ 1. On January 22, 2020, Mr. Ramos entered a guilty plea to this charge of distribution of heroin.

*Id.* ¶¶ 2, 6.

### B. Defendant's Criminal History

The instant offense was not Mr. Ramos's first brush with the law. Over the last four years, Mr. Ramos has been arrested for drug-related offenses numerous times—all of which appear to have taken place in the Tenderloin. PSR ¶¶ 26-32. Many of these arrests involved Mr. Ramos allegedly engaging in drug sales similar to the one he has pleaded guilty to in the present case. For example, on February 23, 2017, officers reportedly observed an individual walk up to Mr. Ramos and purchase narcotics from him before walking away. *Id.* ¶ 28. Officers purportedly found four individually wrapped plastic twists containing suspected heroin on the individual and placed Mr. Ramos under arrest. *Id.* On May 13, 2017, officers reportedly saw Mr. Ramos hand an individual a baggie containing suspected narcotics, and receive U.S. currency in return. *Id.* ¶ 29. Officers purportedly found suspected heroin on the individual and approximately $431.81 in cash on Mr. Ramos. *Id.* In another arrest on May 30, 2017, officers reportedly observed Mr. Ramos giving a bag containing suspected cocaine base to an individual, and located $637 on Mr. Ramos's person when he was apprehended. *Id.* ¶ 30. During three of these previous arrests, Mr. Ramos reportedly attempted to evade police. *Id.* ¶¶ 26, 27, 30. Despite these frequent arrests, Mr. Ramos had not yet incurred a conviction. *Id.* ¶¶ 22-23.

## II. GOVERNMENT'S SENTENCING RECOMMENDATION

**Sentencing Guidelines Calculation**

The parties agreed in the Plea Agreement that the Sentencing Guidelines calculation for Mr. Ramos is as follows:

    a. Base Offense Level, U.S.S.G. §2D1.1.(c)(14): 12
    b. Acceptance of Responsibility, U.S.S.G. § 3E1.1: -2
    c. Adjusted Offense Level: 10

The Government's understanding is that Mr. Ramos has a Criminal History Category of I. PSR ¶¶ 24-25. As a result, his Sentencing Guidelines range is 6 to 12 months.

**18 U.S.C. § 3553(a) Factors**

In accordance with the Plea Agreement in this case, the United States recommends that the Court sentence the defendant to a term of imprisonment of six months, the bottom of the Guidelines range.

The United States also recommends imposition of three years of supervised release and a $100 mandatory special assessment. This sentence reflects the seriousness of Mr. Ramos's offense, will provide just punishment for the harm that Mr. Ramos inflicted on the Tenderloin community, will afford significant general deterrence to other Tenderloin drug dealers, and will specifically deter Mr. Ramos's future criminal activity.

Moreover, though this case does not involve the same volume of drugs as other cases before the Court, dealing any amount of drugs, especially a dangerous and addictive drug like heroin, is a serious offense that is worthy of significant punishment. *See United States v. Lopez*, 104 F.3d 1149, 1151 (9th Cir. 1997) (noting that "[n]arcotics trafficking enables traffickers to reap illicit financial gains and inflict the detrimental effects of narcotics use upon our society"); *United States v. Wilkins*, 911 F.2d 337, 340 (9th Cir. 1990). The recommended sentence of six months incarceration is sufficient, but not greater than necessary, to reflect the seriousness of Mr. Ramos's offense and provide just punishment. The government requests that the Court also consider the deterrent effect of a Guidelines sentence, both to the defendant and to the many other individuals dealing drugs in the Tenderloin.

**Supervised Release**

The Government also recommends that the Court impose a term of supervised release of at least three years to ensure that Mr. Ramos does not reoffend, and that the Court, pursuant to Paragraph 9 of the Plea Agreement, impose the following special conditions of supervised release:

Special Condition (Searches)
The defendant shall submit his person, residence, office, vehicle, electronic devices and their data (including cell phones, computers, and electronic storage media), and any property under defendant's control to a search. Such a search shall be conducted by a United States Probation Officer or any federal, state, or local law enforcement officer at any time, with or without suspicion. Failure to submit to such a search may be grounds for revocation; the defendant shall warn any residents that the premises may be subject to searches.

Special Condition (Tenderloin Stay Away)
The defendant shall not be present in the area in San Francisco bordered on the west by Polk Street and South Van Ness Avenue, on the north by Geary Street, on the east by Powell Street and 3rd Street, and on the south by Mission Street, with the following exceptions: 1) the defendant may enter the area to attend any court proceedings at 450 Golden Gate Avenue, or after requesting and receiving approval from his assigned U.S. Probation Officer; and 2) the defendant may travel on BART, MUNI, or other public transportation through the area, but may

not then alight from said transportation and enter the area on foot.

## III. CONCLUSION

For the reasons set forth above, the Government recommends that the Court impose a sentence of six months of incarceration, at least three years of supervised release with the foregoing special conditions, and a special assessment of $100.

DATED:  March 18, 2020                                  Respectfully submitted,

DAVID L. ANDERSON
United States Attorney


 /s/ Jason Kleinwaks
JASON KLEINWAKS
Assistant United States Attorney